IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
FILE NO.: 4:15-CV-00063-D

| | |
|---|---|
| **AERIAL DEVELOPMENT GROUP, LLC, AERIAL AND ABOVE, LLC and AERIAL INVESTMENT PROPERTIES, LLC,**<br>     **Plaintiff/Counter-Defendants,**<br>**v.**<br>**CAROLINA PRIVATE FINANCIAL CORPORATION d/b/a THE FINANCIAL COPILOT and HUGH O. STEWART**<br>    **Defendants/Counter-Plaintiffs,**<br><hr>**CAROLINA PRIVATE FINANCIAL CORPORATION, HUGH O. STEWART, AND SKYLAND BUSINESS SYSTEMS, INC.**<br>     **Third-Party Plaintiffs,**<br>**v.**<br>**BRITNIE TURNER, AERIAL BUILDERS, LLC, SKYVIEW GROUP, INC., AND ABOVE HOMES, LLC,**<br>     **Third-Party Defendants.** | **REPLY TO VERIFIED COUNTERCLAIM AND THIRD-PARTY COMPLAINT** |

   NOW COME Plaintiffs Aerial Development Group, LLC ("ADG"), Aerial and Above, LLC ("A&A"), and Aerial Investments Properties, LLC ("AIP"), (collectively "Plaintiffs") and Britnie Turner ("Turner"), Aerial Builders, LLC ("Aerial Builders") Skyview Group, Inc. ("Skyview") and Above Homes, LLC ("Above Homes") (collectively, "Third Party Defendants") (Plaintiffs and Third-Party Defendants are collectively referred to herein as the "Answering Parties"), by and through the undersigned counsel, hereby responding to the Verified Counterclaim and Third-Party Complaint ("Counterclaim and Complaint") [DE 13] of Defendants/Counter-Plaintiffs and Third-Party Plaintiffs (collectively, the "Stewart Parties") as follows:

<u>**PARTIES**</u>

   1.  Paragraph 1 is admitted, upon information and belief.

{00348361.DOCX V.2 A225.022168;}

2.      Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 2 of Counterclaim and Complaint and therefore deny the same.

3.      Paragraph 3 is admitted, upon information and belief.

4.      Paragraph 4 is admitted.

5.      It is admitted that ADG is a Tennessee limited liability company with a principal place of business located at 521 5th Avenue South, Nashville, Tennessee 37203-4211, with a registered agent as described. The remaining allegations of Paragraph 5 are denied.

6.      It is admitted that AIP is a Tennessee limited liability company with a principal place of business located at 521 5th Avenue South, Nashville, Tennessee 37203-4211, with a registered agent as described. The remaining allegations of Paragraph 5 are denied.

7.      Paragraph 7 is admitted.

8.      Paragraph 8 is admitted.

9.      Paragraph 9 is admitted.

10.     Paragraph 10 is admitted.

## VENUE AND JURISDICTION

11.     Paragraph 11 is denied.

12.     It is admitted that the Answering Parties' residency is as set forth above, and that Answering Parties operate their business in Tennessee. The remaining allegations of Paragraph 12 are denied.

13.     Paragraph 13 is denied.

## FACTS

14.     It is admitted that Ms. Turner is the founder & CEO of Answering Defendants, and holds 100% ownership of the managing member of each of these entities, except Aerial and Above, LLC and Above Homes, LLC. It is specifically admitted that Hugh Stewart ("Stewart")

{00348361.DOCX V.2 A225.022168;}          2

has no ownership interest in any of these entities. The remaining allegations of Paragraph 14 are denied.

15.    Paragraph 15 is denied.

16.    Paragraph 16 is denied.

17.    Paragraph 17 is denied.

18.    Paragraph 18 is denied.

19.    Paragraph 19 is denied.

A COACHING BUSINESS RELATIONSHIP

20.    Paragraph 20 is denied.

21.    Paragraph 21 is admitted.

22.    It is admitted that, based on Stewart's false representations regarding the skill and experience offered by him and Carolina Private Financial Corporation d/b/a The Financial Co-Pilot ("TFC"), Turner agreed to engage Stewart and TFC to provide certain services to Answering Defendants. The remaining allegations of Paragraph 22 are denied.

23.    Paragraph 23 is denied.

24.    It is admitted that the then existing Answering Defendants continued to grow from 2010 through 2011. The remaining allegations of Paragraph 24 are denied.

25.    Paragraph 25 is denied.

A FINANCIAL SERVICES BUSINESS RELATIONSHIP

26.    Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 26 of Counterclaim and Complaint and therefore deny the same.

27.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 27 of Counterclaim and Complaint and therefore deny the same.

28.     It is admitted that a document is attached as Exhibit A to the Counterclaim and Complaint, and that Exhibit A is in writing and speaks for itself. It is specifically denied that AIP executed Exhibit A with accurate and truthful information regarding the skill and experience offered by Stewart and TFC, or that Stewart or TFC ever provided the services they promised to provide thereunder. The remaining allegations of Paragraph 28 are denied.

29.     It is admitted that certain terms regarding the services to be provided to Answering Defendants is in writing and speak for themselves.  It is further admitted that, in reliance on the representations by Stewart in his meetings and communications with Turner, Stewart/TFC was given access to Answering Defendants' financial accounts (see the Bank Draft/ACH Debit Authorization attached as Exhibit A to the Counterclaim and Complaint), and that Stewart used that authorization and control to make payments to himself and TFC from ADG accounts without notice to or authorization from anyone at ADG. The remaining allegations of Paragraph 29 are denied.

30.     It is admitted that Stewart and/or TFC presented Answering Defendants with proposed written contracts at various times, and made numerous representations about the amount of services being provided as a part of ongoing demands for increased compensation. The remaining allegations of Paragraph 30 are denied.

31.     It is admitted that Answering Defendants continued to grow and increase revenues. The remaining allegations of Paragraph 31 are denied.

32.     It is admitted that Stewart and/or TFC presented Answering Defendants with proposed written contracts at various times, and made numerous representations about the

{00348361.DOCX V.2 A225.022168;}          4

amount of services being provided as a part of ongoing demands for increased compensation. The remaining allegations of Paragraph 32 are denied.

33.     It is admitted that Stewart/TFC continually failed to provide the services they had committed to providing, and were unable to produce financial documents in a timely manner, and that Stewart/TFT repeatedly attempted to blame their lack of performance on Answering Defendants.  The remaining allegations of Paragraph 33 are denied.

34.     It is admitted that Stewart and/or TFC presented Answering Defendants with proposed written contracts at various times, and made numerous representations about the amount of services being provided as a part of ongoing demands for increased compensation, and, at one point, recommended engaging a certified public accountant to provide the services Stewart/TFC were apparently incapable of providing, despite their representations to the contrary. The remaining allegations of Paragraph 34 are denied.

35.     It is admitted that Stewart and/or TFC presented Answering Defendants with proposed written contracts at various times, and made numerous representations about the amount of services being provided as a part of ongoing demands for increased compensation. It is further admitted that, upon presentation of proposed agreements, Stewart/TFC would without acceptance or authorization from Answering Defendants, immediately begin paying themselves increased compensation using the ACH Debit Authorization authority granted in January, 2012. The remaining allegations of Paragraph 35 are denied.

THE PARTNERSHIP

36.     Paragraph 36 is denied.

37.     It is admitted that discussions regarding a potential partnership with Stewart (which was proposed by Stewart) were conducted in person in Fort Lauderdale, Florida. It is specifically denied that an oral partnership agreement was ever reached, that an oral agreement

would be legally enforceable even if an agreement had been reached, or that Stewart/TFC ever fulfilled or performed the services they proposed providing as part of their consideration for any alleged partnership or equity interest.  The remaining allegations of Paragraph 37 are denied.

38.    It is admitted that, when challenged by Turner as to the enormous amount of fees Stewart/TFC were requesting/withdrawing from Answering Defendants' bank accounts, at one point Stewart proposed that he be allowed to provide consultation and the services at a reduced rate in return for an equity position.  It is further admitted that, on or about May 2013, Turner told Stewart that if he completed these services and set up the systems for the Company within two years for negotiated fees, she would consider giving him an ownership interest in ADG.  The remaining allegations of Paragraph 38 are denied.

39.    It is admitted that by July, 2013, only 2 months after the conversation set forth in Paragraph 38, above, Stewart/TFC were already woefully behind schedule. It is specifically denied Answering Defendants agreed to extend the schedule. The remaining allegations of paragraph 39 are denied.

40.    It is admitted that Stewart proposed that he be allowed to provide consultation and the services at a reduced rate in return for an equity position.  It is further admitted that, as a part of that proposal, Stewart provided a specific list of services he would be providing to earn that equity interest, and that, on or about May 2013, Turner told Stewart that if he completed the specific services for the Company within two years, she would consider giving him an ownership interest in ADG in the amount of 12%.  The remaining allegations of Paragraph 40 are denied.

41.    It is admitted that, in addition to wanting 12% of the company, Stewart/TFC insisted that their services were so valuable that Stewart should also receive a $77,000 capital account credit, and $5,750/month, as well as quarterly distributions. The remaining allegations of Paragraph 41 are denied.

42.     It is admitted that, like with the certified public accountant, one of the indicia of the fact that Stewart was incapable of providing the services he represented he could provide is the fact that he had to engage other individuals or otherwise outsource all actual work performed. The remaining allegations of Paragraph 42 are denied.

43.     It is admitted that no binding partnership agreement was formed in May, 2013, but rather the parties entered into a "trial period" during which Stewart would be considered for an equity interest depending on whether he could provide the services promised. It is further admitted that Stewart/TFC never provided those services, and that is the reason neither a written partnership agreement was ever executed nor was Stewart ever given an ownership interest in any of Answering Defendants, whether orally or in writing. The remaining allegations of Paragraph 43 are denied.

44.     Paragraph 44 is denied.

45.     It is admitted that no binding partnership agreement was formed in May, 2013, but rather the parties entered into a "trial period" during which Stewart would be considered for an equity interest depending on whether he could provide the services promised. It is further admitted that Stewart/TFC never provided those services, and that is the reason no written partnership agreement was ever executed nor was Stewart ever given an ownership interest in any of Answering Defendants. The remaining allegations of Paragraph 45 are denied.

46.     Paragraph 46 is denied.

47.     Paragraph 47 is denied.

48.     Paragraph 48 is denied.

49.     Paragraph 49 is denied.

50.     Paragraph 50 is denied.

51.     It is admitted that during the parties' "trial period" during which Stewart would be considered for an equity interest, he was paid 2 distributions. It is further admitted that although distributions to Turner over this time, as a member, were treated as a "member draw," Stewart's distributions were to be "made to CPFC in the form of a consulting fee until otherwise decided." The remaining allegations of Paragraph 51 are denied.

52.     It is admitted that during the parties "trial period" during which Stewart would be considered for an equity interest, he was paid 2 distributions. It is further admitted that although distributions to Turner over this time, as a member, were treated as a "member draw," Stewart's distributions were to be "made to CPFC in the form of a consulting fee until otherwise decided." The remaining allegations of Paragraph 52 are denied.

53.     It is admitted that Stewart/TFC requested Turner to give Stewart control and oversight over certain financial operations and administration.  Further admitted that Stewart advised Turner to focus on vision and project setting, leaving Stewart in control of the administrative portions of the business. Except as expressly admitted, the allegations of Paragraph 53 are denied.

SECOND REVISED FINANCIAL SERVICES AGREEMENT

54.     Paragraph 54 is denied.

55.     Paragraph 55 is denied.

56.     It is admitted that a document is attached as Exhibit B to the Counterclaim and Complaint, and that such document is in writing and speaks for itself. It is further admitted that Stewart and/or TFC presented Answering Defendants with proposed written contracts at various times, and made numerous representations about the amount of services being provided as a part of ongoing demands for increased compensation. It is further admitted that, upon presentation of proposed agreements, Stewart/TFC would without acceptance or authorization from Answering

{00348361.DOCX V.2 A225.022168;}          8

Defendant, immediately begin paying themselves increased compensation using the ACH Debit Authorization authority granted in January, 2012. It is specifically denied that Stewart/TFC provided the services set forth in Exhibit B in a competent or timely manner. The remaining allegations of Paragraph 56 are denied.

57. Paragraph 57 is denied.

58. Paragraph 58 is denied.

59. Paragraph 59 is admitted.

60. Paragraph 60 is denied.

61. Paragraph 61 is denied.

62. Paragraph 62 is denied.

AN EXPANDED OPERATIONAL ROLE UNDER THE PARTNERSHIP

63. Paragraph 63 is denied.

64. Paragraph 64 is denied.

65. Paragraph 65 is denied.

66. Paragraph 66 is denied.

67. Paragraph 67 is denied.

68. Paragraph 68 is denied.

69. Paragraph 69 is denied.

70. It is admitted that in late 2013/early 2014, a draft written partnership agreement was created, but never finalized or executed. The remaining allegations of Paragraph 70 are denied.

71. Paragraph 71 is denied.

72. It is admitted that Answering Defendants made numerous attempts to get Stewart/TFC to perform, and to focus more attention on their obligations to Answering

Defendants in light of the deficient and untimely performance. The remaining allegations of Paragraph 72 are denied.

73.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 73 of Counterclaim and Complaint and therefore deny the same.

## CONTRACT FINANCE DEPARTMENT 2014 AND DECEMBER 2014 FINANCIAL SERVICES AGREEMENT

74.     It is admitted that ADG continued to grow, and was far beyond the ability of Stewart/TFC to provide the services promised. The remaining allegations of Paragraph 74 are denied.

75.     Paragraph 75 is denied.

76.     It is admitted that Stewart/TFC failed to perform and produce timely financial reports as promised and per its obligations under Exhibit B to the Counterclaim and Complaint. The remaining allegations of Paragraph 76 are denied.

77.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 77 of Counterclaim and Complaint and therefore deny the same.

78.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 78 of Counterclaim and Complaint and therefore deny the same.

79.     It is admitted that Stewart became a dealer for the product he sold to Answering Defendants, and upon information and belief thereby received commissions thereon. Answering Parties lack sufficient information to form a belief as to the truth of the remaining allegations set forth in Paragraph 79 of Counterclaim and Complaint and therefore deny the same.

80.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 80 of Counterclaim and Complaint and therefore deny the same.

81.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 81 of Counterclaim and Complaint and therefore deny the same. It is specifically denied that Answering Defendants were not substantially overcompensating Stewart/TFC for any services provided.

82.     Paragraph 82 is denied.

83.     Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 83 of Counterclaim and Complaint and therefore deny the same. It is specifically denied that Answering Defendants were not substantially overcompensating Stewart/TFC for any services provided.

84.     It is admitted that a document is attached as Exhibit C to the Counterclaim and Complaint, and that such document is in writing and speaks for itself. It is further admitted that Stewart and/or TFC presented Answering Defendants with proposed written contracts at various times, and made numerous representations about the amount of services being provided as a part of ongoing demands for increased compensation. It is further admitted that, upon presentation of proposed agreements, Stewart/TFC would without acceptance or authorization from Answering Defendants, immediately begin paying themselves increased compensation using the ACH Debit Authorization authority granted in January, 2012. It is specifically denied that Stewart/TFC provided the services set forth in Exhibit C in a competent or timely manner. The remaining allegations of Paragraph 84 are denied.

AERIAL CAPITAL PARTNERS

85.     Paragraph 85 is denied.

86.     It is admitted that an oral agreement existed between the named Answering Defendants and Stewarts regarding a multi-family project commonly referred to as Hermitage Gardens whereunder Stewart, through an entity of his choosing, would be compensated for services provided related to this project from the profits after closing on the same.  Except as admitted, the remaining allegations of Paragraph 86 are denied.

87.     Paragraph 87 is denied.

88.     It is admitted that a closing of a sale of Hermitage Gardens took place and that Stewart was compensated through an entity of his choosing for the services he provided pursuant to an oral agreement between with the related Answering Defendants.  Except as admitted, the remaining allegations of Paragraph 88 are denied.

89.     Paragraph 89 is denied.

90.     Paragraph 90 is denied.

91.     Paragraph 91 is denied.

A ONE-SIDED BUSINESS RELATIONSHIP

92.     Paragraph 92 is denied.

93.     Paragraph 93 is denied.

94.     Paragraph 94 is denied.

95.     Paragraph 95 is denied.

96.     Paragraph 96 is denied.

97.     It is admitted that in late 2014/early 2015, additional corporate officers were hired by Answering Defendants, and that such officers quickly discovered the malfeasance committed by Stewart/TFC. The remaining allegations of Paragraph 97 are denied.

98.     It is admitted that the new corporate officers hired by Answering Defendants quickly discovered the malfeasance committed by Stewart/TFC, which resulted in Stewart/TFC being shut out. The remaining allegations of Paragraph 98 are denied.

99.     It is admitted that, upon discovery of the malfeasance committed by Stewart/TFC, Stewart and all TFCs employees were no longer invited to meetings, and Stewart was purposefully excluded and denied access. The remaining allegations of Paragraph 99 are denied.

100.     It is admitted that, upon discovery of the malfeasance committed by Stewart/TFC, Turner stopped taking Stewart's calls and ceased communication. The remaining allegations of Paragraph 100 are denied.

101.     It is admitted that once Answering Defendants cut off Stewart/TFC, they discovered that, despite all representations to the contrary, TFC had no clients other than Answering Defendants and Stewart couldn't afford to keep TFC operating without being able to fund it entirely from Answering Defendants' accounts. It is further admitted that Answering Defendants hired Rhonda Crites. The remaining allegations of Paragraph 101 are denied.

102.     Paragraph 102 is denied.

103.     Paragraph 103 is denied.

104.     It is admitted that, upon the collapse of TFC, Answering Defendants hired Rhonda Crites. It is also admitted that Answering Defendants attempted to avoid litigation and reach an amicable settlement with Stewart, which such settlement offer was rejected. The remaining allegations of Paragraph 104 are denied.

105.     It is admitted that, upon the collapse of TFC, which Defendant Stewart admitted to (that he had no funds to continue to operate and would have to close the North Carolina operations, and asked Answering Defendants to please pay his lease for a month), Answering Defendants hired former TFC staff. The remaining allegations of Paragraph 105 are denied.

## COUNT I.  BREACH OF CONTRACTS

106.    Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 105 above as if fully restated herein.

107.    Paragraph 107 is denied.

108.    Paragraph 108 is denied.

109.    Paragraph 109 is denied.

110.    Paragraph 110 is denied.

111.    Paragraph 111 is denied.

112.    Paragraph 112 is denied.

113.    Paragraph 113 is denied.

114.    Paragraph 114 is denied.

## COUNT II.  UNJUST ENRICHMENT

115.    Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through114 above as if fully restated herein.

116.    Paragraph 116 is denied.

117.    Paragraph 117 is denied.

118.    Paragraph 118 is denied.

119.    Paragraph 119 is denied.

120.    Paragraph 120 is denied.

## COUNT III.  QUANTUM MERUIT

121.    Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 120 above as if fully restated herein.

122.    Paragraph 122 is denied.

123.    Paragraph 123 is denied.

124.    Paragraph 124 is denied.

125.    Paragraph 125 is denied.

## COUNT V.  PROMISSORY FRAUD

126.    Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 125 above as if fully restated herein.

127.    Paragraph 127 is denied.

128.    Paragraph 128 is denied.

129.    Paragraph 129 is denied.

130.    Paragraph 130 is denied.

131.    Paragraph 131 is denied.

## COUNT V.  PROMISSORY FRAUD

132.    Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 131 above as if fully restated herein.

133.    Paragraph 133 is denied.

134.    Paragraph 134 is denied.

135.    Paragraph 135 is denied.

136.    Paragraph 136 is denied.

137.    Paragraph 137 is denied.

138.    Paragraph 138 is denied.

## COUNT VI.  FRAUD

139.    Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 138 above as if fully restated herein.

140.    Paragraph 140 is denied.

141.    Paragraph 141 is denied.

142.  Paragraph 142 is denied.

143.  Paragraph 143 is denied.

144.  Paragraph 144 is denied.

## COUNT VII.  FRAUD IN THE INDUCEMENT

145.  Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 144 above as if fully restated herein.

146.  Paragraph 146 is denied.

147.  Paragraph 147 is denied.

148.  Paragraph 148 is denied.

149.  Paragraph 149 is denied.

150.  Paragraph 150 is denied.

## COUNT VIII.  TORTIOUS INTERFERENCE

151.  Answering Parties hereby incorporate their answers and responses to Paragraphs 1 through 150 above as if fully restated herein.

152.  Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 152 of Counterclaim and Complaint and therefore deny the same.

153.  Paragraph 153 is denied.

154.  Answering Parties lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 152 of Counterclaim and Complaint and therefore deny the same. It is specifically denied that any of TFC's business relationships failed because of intentional acts or by improper means by Answering Defendants.

155.  Paragraph 155 is denied.

156.  Paragraph 156 is denied.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Defendants' Counterclaim for "Promissory Fraud" fails as a matter of law in North Carolina which does not recognize promissory estoppel as an affirmative cause of action.

## SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands/Equitable Estopple)

Defendants' claims for equitable relief are barred by Defendants' unclean hands for the reasons set forth in the Complaint and above and the Stewart Parties are equitably estopped from seeking equitable relief based on their own conduct as set forth herein and in prior pleadings.

## THIRD AFFIRMATIVE DEFENSE
### (Fraudulent Inducement/Prior Material Breach)

Defendants' claims for breach of contract are barred by Defendants' false representations which induced Answering Defendants to enter into said contracts, and by Defendants' prior material breaches of those contracts in the event they are found to be enforceable.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Plead with Particularity)

The Stewart Parties' claims for fraud, misrepresentation and tortious interference fail as a matter of law as they have not been pled with sufficient particularity.

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim/Unenforceability)

The Stewart Parties' claims arising out of an alleged oral partnership fail as a matter of law as, taking the allegations in the Counterclaim and Verified Complaint as true, there was no meeting of the minds, nor would an oral partnership agreement, even if one had been reached, be enforceable under the applicable state law.

## SIXTH AFFIRMATIVE DEFENSE
### (Waiver)

Defendants are barred from obtaining any of the relief sought because their conduct constitutes a waiver of any rights they may have had. For example, Defendants admit to failing to produce the financial documents in a timely manner as required by the attached contracts, and also to failing to meet the 2 year term required during the trial period which was a prerequisite to the proposed partnership. Furthermore, the Answering Parties and TFC entered into new amendments/agreements following the alleged breaches and, therefore, said prior breaches are waived.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure of Consideration)

The Stewart Parties' alleged contractual claims are barred as a matter of law due to their failure to perform thereunder and provide the promised consideration.

## EIGHTH AFFIRMATIVE DEFENSE
### (Failure of Condition Precedent)

Hugh O. Stewart and the Stewart Parties failed to meet conditions precedent under any alleged oral partnership agreement, by, among other things, failing to perform the services forming their consideration for such an equity interest in any of Answering Defendants and meeting the conditions precedent thereunder.

WHEREFORE, having fully responded to the Verified Counterclaim and Third-Party Complaint, Answering Parties respectfully pray the Court for the following relief:

1.     That Defendants' Verified Counterclaim and Third-Party Complaint be dismissed with prejudice as to Answering Parties, and that the Stewart Parties have and recover nothing from Answering Parties;

2. That the Court award attorneys' fees to Answering Parties;

3. That the costs of this action be taxed against the Stewart Parties;

5. For such other, equitable, and further just relief as the Court deems just and proper.

This 3rd day of May, 2016.

By: /s/ M. Aaron Lay
Erik Rosenwood (NC Bar # 28049)
M. Aaron Lay (NC Bar # 38797)
HAMILTON STEPHENS STEELE + MARTIN, PLLC
201 South College Street, Suite 2020
Charlotte, North Carolina 28244-2020
Telephone: (704)344-1117
Fax: (704) 344-1483
Email: malay@lawhssm.com
erosenwood@lawhssm.com
*Attorneys for Plaintiffs/ Third Party Defendants/ Counter Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **REPLY TO VERIFIED COUNTERCLAIM AND THIRD-PARTY COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the registered participants as follows:

| | |
|---|---|
| Jeffrey A. Doyle | John R. Clemmons |
| Hedrick, Gardner, Kincheloe and Garofalo, LLP | Clemmons & Clemmons, PLLC |
| 4131 Parklake Avenue, Suite 300 | 211 Union Street, Suite 102 |
| Raleigh, North Carolina 27617 | Nashville, Tennessee 37201 |
| jdoyle@hedrickgardner.com | johnray@clemlawfirm.com |
| *Attorneys for Defendants/Third Party* | *Attorneys for Third Party* |
| *Plaintiffs/ Counter Claimants* | *Plaintiffs/Counter Claimants* |

This 3rd day of May, 2016

By:     /s/ M. Aaron Lay_____
Erik Rosenwood (NC Bar # 28049)
M. Aaron Lay (NC Bar # 38797)
HAMILTON STEPHENS STEELE + MARTIN, PLLC
201 South College Street, Suite 2020
Charlotte, North Carolina 28244-2020
Telephone: (704)344-1117
Fax: (704) 344-1483
Email:  malay@lawhssm.com
erosenwood@lawhssm.com
*Attorneys for Plaintiffs/ Third Party Defendants/ Counter Defendants*